```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
CAMBRIDGE CAPITAL LLC,                                           :
                                                                 :
                        Plaintiff,                               :
                                                                 :      20-cv-11118 (LJL)
        -v-                                                      :
                                                                 :      MEMORANDUM AND
RUBY HAS LLC,                                                    :           ORDER
                                                                 :
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/24/2022

LEWIS J. LIMAN, United States District Judge:

Plaintiff-Counterclaim Defendant Cambridge Capital LLC ("Cambridge Capital") moves to compel Defendant-Counterclaim Plaintiff Ruby Has LLC ("Ruby Has") to produce documents and communications relating to the recent sale of Ruby Has's business to ShipMonk. Dkt. No. 81. In turn, Ruby Has moves to compel Cambridge Capital: (1) to produce Essa Al-Saleh for a 30(b)(1) deposition; and (2) to produce documents and communications concerning any efforts by Cambridge Capital to terminate certain individuals who were terminated from companies in Cambridge Capital's portfolio companies following its investment in those companies. Dkt. No. 82. The Court addresses Ruby Has's motion first and then turns to Cambridge Capital's motion.

## DISCUSSION

### I. Production of Essa Al-Saleh for a 30(b)(1) Deposition

Under Federal Rule of Civil Procedure 30(b)(1), "a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition." *Schindler Elevator Corp. v. Otis Elevator Co.*, 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007). "A corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice." *Dubai Islamic Bank v. Citibank, N.A.*,

2002 WL 1159699, at *2 (S.D.N.Y. May 31, 2002).  Although the test is "not formulaic," *id.* (quoting *Boss Mfg. Co. v. Hugo Boss AG*, 1999 WL 20828, at *3 (S.D.N.Y. Jan 13, 1999)),

> courts in this district have generally considered five factors in determining whether an individual is a managing agent: '1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.'

*Id.* at *3 (quoting *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985)).  The burden is on the examining party to establish the status of the witness, *Sugarhill Records*, 105 F.R.D. at 170, but it has been described as "modest," *Dubai Islamic Bank*, 2002 WL 1159699, at *4 (quoting *Boss Mfg.*, 1999 WL 20828, at *4):  The examining party need only present "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." *Id.* (quoting *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).[1]

Ruby Has not satisfied even that modest burden.  With respect to the first factor, Ruby Has claims that Cambridge Capital held Al-Saleh out as an Operating Partner during the time of the events in the complaint and now holds him out as an Operating Advisor and that Al-Saleh is one of the few people who negotiated the potential transaction on behalf of Cambridge Capital and was the key person who negotiated directly with Ruby Has's founder and CEO.  Dkt. No.

---

[1] This standard is not free from doubt.  As Judge Francis has explained, the notion of a modest burden makes the most sense in respect of current employees and "when the only pretrial consequence of determining the deponent's status is whether he will be served with a subpoena and tendered a witness fee." *Afram Lines (USA)*, 159 F.R.D. at 414.  "The case for tilting in favor of the examining party is less strong . . . where the proposed deponent is not an employee of the opponent and may, in fact, be beyond its control." *Id.*  The Court need not resolve that issue here.  Ruby Has has not made even a modest showing that Al-Saleh is a managing partner.

82. It points to Cambridge Capital's website that describes Al-Saleh as having "joined Cambridge Capital as an Operating Partner." Dkt. Nos. 82-1, 82-2. But there is no evidence as to what the role of Operating Partner entails or that it would invest Al-Saleh with general powers, or any powers, to exercise judgment and discretion in corporate matters. Cambridge Capital asserts, without contradiction, Dkt. No. 83, that Al-Saleh has no management responsibilities with respect to Cambridge Capital's business. Indeed, Ruby Has's allegations in its Second Amended Counterclaims ("SACC"), Dkt. No. 71, to which it points on this motion, undercut its claim. The SACC describes the principals of Cambridge Capital as Benjamin Gordon and Matthew Smalley (and state that the counterclaims arise from their bad faith conduct). *Id.* ¶ 1. When Ruby Has expressed frustrations that Cambridge Capital was making changes to the proposed terms of a deal and told Al-Saleh that it was prepared to walk away from the deal, Al-Saleh did not negotiate on behalf of Cambridge Capital; the SACC alleges that he responded to Ruby Has that he would speak to Gordon to make sure that Cambridge Capital was sticking to the deal terms of the letter of intent. *Id.* ¶ 70. Indeed, far from holding Al-Saleh out as a managing partner or employee of Cambridge Capital, the SACC alleges that Cambridge Capital claimed that Al-Saleh was independent of Cambridge Capital.[2] *Id.* ¶¶ 80–81.

Second, the evidence is insufficient that Al-Saleh can be relied upon to give testimony at Cambridge Capital's request. The question raised by the second factor is not just whether the witness is willing to appear or is legally required to appear, but "whether he would, if [a party] were required to produce him, appear for a deposition." *Schindler Elevator Corp.*, 2007 WL

---

[2] Ruby Has relies upon paragraphs 25–27 of the amended complaint in which Cambridge Capital stated that it employed "professionals with deep experience in logics," and then offered as an example that Al-Saleh is an Operating Partner with Cambridge Capital. Dkt. No. 67 ¶¶ 25–26. But even assuming that the term "employee" is to be understood in a formal rather than colloquial sense, the fact that someone is an employee does not make him a managing agent.

3

1771509, at *5.  Ruby Has notes that Cambridge Capital has produced documents on Al-Saleh's behalf in the case.  Dkt. No. 82.  That factor tips in favor of a finding that Al-Saleh would give testimony at Cambridge Capital's request but alone is insufficient to make Al-Saleh a managing partner and to find on this factor in favor of Ruby Has.  Parties to litigation not infrequently agree to assist their adversary in obtaining documents that would otherwise be obtainable only by subpoena; the fact that the third party agrees to provide documents through a litigant does not itself demonstrate that the third party would be willing to appear for sworn testimony.  "[T]here has been no showing [here] that [Al-Saleh] ever provided sworn testimony for [Cambridge Capital] without being required to do so by subpoena or other formal process."  *Afram Lines (USA)*, 159 F.R.D. at 415.

       The third factor asks whether any person or persons employed by the corporate employer is in a position higher than the proposed deponent with respect to the area as to which testimony is sought, and the fourth factor asks about the proposed deponent's general responsibilities respecting the matters involved in the litigation.  Ruby Has falls short on these factors as well.  It emphasizes that Al-Saleh was one of only a few persons involved in the negotiations and that he appears on more than 1,500 documents in the document production.  Dkt. No. 82 at 2.  But Al-Saleh's status as only one of the few people involved in the transaction appears to be a function of the fact that very few people were involved on the side of Cambridge Capital—maybe two or three—and the number of documents means nothing without any indication of their contents.  From the SACC, Gordon—who was in a position of higher authority—was the key negotiator.  The SACC describes Al-Saleh playing a role more akin to that of a partner to Cambridge Capital—someone who might be prepared to assume a board seat if the transaction was

consummated but not a person with authority with respect to the negotiations, the ostensible topic on which Ruby Has seeks his testimony.

Finally, Ruby Has not demonstrated on this record that Al-Saleh is someone who could be expected to identify with the interests of Cambridge Capital, such that a deposition notice to Cambridge Capital would as a practical matter result in the production of Al-Saleh. Although, as noted, Cambridge Capital's website described Al-Saleh as having "joined Cambridge Capital as an Operating Partner," Dkt Nos. 82-1, 82-2, and he is now an Operating Advisor, Al-Saleh himself is silent about whether he has a relationship with Cambridge Capital much less one that would have him identify himself with the interests of Cambridge Capital. Al-Saleh does not list Cambridge Capital as his employer on his public LinkedIn page. Dkt. No. 83-1. Rather, it states that, from March 2007 until April 2020, Al-Saleh served as the President and CEO of Agility, a publicly-traded company based in Kuwait; that from May 2020 to April 2021, he was CEO of Agitero AG in Switzerland; and since April 2021, he has been the CEO of Volta Trucks, an electric vehicle company based in Sweden. *Id.*

Al-Saleh's formal status as an advisor is not itself dispositive of whether he is a managing agent. *See Afram Lines (USA)*, 159 F.R.D. at 413 ("'[T]he question of whether a particular person is a "managing agent" is to be answered pragmatically on an ad hoc basis . . . .' Whether a proposed deponent falls into a particular category of employees or agents is therefore less relevant than the individual's specific functions and authority." (citations omitted)). There are cases where a person characterized as an independent contractor or a consultant have been found to be managing agents. *See, e.g.*, *Schindler Elevator Corp.*, 2007 WL 1771509, at *8 (independent contractor); *Calgene, Inc. v. Enzo Biochem, Inc.*, 1993 WL 645999, at *8 (E.D. Cal. Aug. 27, 1993) (board member and consultant). But, in this case, Ruby Has has neither

proffered evidence of a "long, intimate relationship and shared interests with [Cambridge Capital]," *Schindler Elevator Corp.*, 2007 WL 1771509, at *8, nor that Al-Saleh had a position that "would empower him to exercise discretion in the corporate matters entrusted to him," *Calgene*, 1993 WL 645999, at *8.[3]

## II.    Document Request No. 33

Ruby Has moves to compel "Documents Concerning any efforts by the Cambridge Parties to terminate any individual identified in response to the interrogatories, or cause his or her termination or resignation from the company, and Communications regarding the same." Dkt. No. 82 at 3.  In particular, it seeks documents concerning management changes at LiftIt and Greenscreens, two of Cambridge Capital's portfolio companies.  *Id.*  Ruby Has claims that the requested documents relate directly to its fraud claim, which is based on Cambridge Capital's alleged affirmative misrepresentations that it worked with existing management at its portfolio companies rather than replacing them.  *Id.*  Cambridge Capital opposes the motion on the theory that documents are confidential to companies other than Cambridge Capital.  Dkt. No. 83 at 3.  It contends that information about the decision of the LiftIt Board (on which members of Cambridge Capital sit) to remove a particular manager is confidential to LiftIt.  *Id.*  Gordon, rather than Cambridge Capital, made an investment in Greenscreens, which was followed by the decision within the year by two executives to leave.  *Id.*  Cambridge Capital argues that the confidence belongs to Greenscreens and not to Cambridge Capital.  *Id.*

---

[3] *Schindler Elevator Corp.*, 2007 WL 1771509, at *5–6, relied upon by Ruby Has, is clearly distinguishable.  In that case, the court held that a witness characterized as an independent contractor was a "managing agent" of plaintiffs where plaintiffs' counsel had stated that the witness would appear for a deposition if requested, he had played an instrumental role in plaintiffs' business for a decade, and where he maintained an email accounts with plaintiffs, communicated regularly with plaintiffs, and was involved in sales and marketing and had access to plaintiffs confidential documents reflecting a close relationship between plaintiffs and the witness.

6

The allegations for which the documents are relevant are the subject of a current motion to dismiss the Second Amended Counterclaims.  Dkt. No. 72.  The Court's disposition of that motion may address the extent to which, if at all, the documents are relevant to the claims and defenses in this case.  Accordingly, the Court denies the motion to compel these documents without prejudice to its renewal after the Court rules upon the pending motion.

**III.    Documents Relating to Ruby Has's Sale to ShipMonk**

Cambridge Capital moves to compel production of the following documents it requested in its first and second requests for production of documents, apparently served on April 21, 2021 (with paragraph number of the request indicated):

> 29. All documents and communications concerning ShipMonk;
>
> 30. All documents and communications between Ruby and Summit Partners;
>
> 31. All documents and communications between Ruby and ShipMonk;
>
> 33. All documents and communications concerning any potential investment by Summit Partners;
>
> 34. All documents and communications concerning any potential investment by ShipMonk; and
>
> 42. All documents and communications concerning any sale of any ownership interest in Ruby.

Dkt. No. 81 at 2; *see also* Dkt. No. 81-1.  The requests relate to a central factual question in the case.  Cambridge Capital alleges that Ruby Has breached an exclusivity provision in a letter of intent and violated a duty to negotiate in good faith by retrading agreed-upon terms between the parties for Cambridge Capital's purchase of Ruby Has once Ruby Has became convinced it could obtain a higher valuation elsewhere.  For its part, Ruby Has alleges that Cambridge Capital committed fraud by deceiving it into negotiating with Cambridge Capital and depriving it of the ability to secure an alternative investor.  ShipMonk and Summit Partners were among the entities

Ruby Has allegedly approached during Cambridge Capital's alleged Exclusivity Period. It has recently been reported that Ruby Has was acquired by ShipMonk.

Ruby Has responded to each of the requests with a boilerplate objection that the request was overly broad and overly burdensome, sought information not relevant to the prosecution or defense in the action, and was not reasonably calculated to lead to the discovery of admissible evidence and (in some instances) that the request called for confidential information regarding a third party but then stated: "Subject to, and without waiver of, this objection and the General Objections, Defendant will produce non-privileged documents in its possession, custody or control, if any, that are responsive to this Request." Dkt. No. 81-1.[4] Since the ShipMonk transaction was announced, Ruby Has has refused to produce the full set of documents, claiming that a portion are irrelevant to the case and should not be produced.

Cambridge Capital argues that Ruby Has waived any objections by agreeing to produce the documents in its responses to the request for production. It also argues that the documents are relevant both to its claims and to its defense of the counterclaims. In its view, negotiations between Ruby Has and ShipMonk would be relevant—even if they postdated the end of the Exclusivity Period—because they would shed light on any discussions that occurred during the Exclusivity Period. It also argues that the ultimate deal terms are relevant because, to the extent Ruby Has accepted terms in its deal with ShipMonk that it allegedly rejected with Cambridge Capital, it would tend to show Ruby Has's bad faith in dealing with Cambridge Capital and that it objected to the deal terms only as an excuse to avoid its obligations to Cambridge Capital and

---

[4] "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34 (b)(2)(C).

8

to sign a more lucrative transaction with ShipMonk. Cambridge Capital also argues that the documents are relevant to damages on Ruby Has's fraud claims.

Ruby Has argues that it responded to the document request by producing relevant communications to the extent that existed, during the course of Ruby Has's negotiations with Cambridge Capital, including the entire time period that Cambridge Capital claims to have formed the Exclusivity Period. Ruby Has also claims that documents concerning the ShipMonk acquisition, which was announced in January 2022, a little over a year after the Exclusivity Period ended, are not relevant: ShipMonk acquired 100% of Ruby Has in a strategic acquisition whereas Cambridge Capital had an alleged agreement to acquire 51% in a private equity transaction. Dkt. No. 84 at 1–2.

Federal Rule of Civil Procedure 34 sets forth the procedure for responding to and objecting to requests for production of documents. Fed. R. Civ. P. 34(b)(2). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also* 7 Moore's Federal Practice - Civil § 34.13(2)(b) ("An objection to a Rule 34 request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. Generic, non-specific objections are improper."). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

A party who fails to make a timely objection or fails to comply with the provisions of Rule 34 regarding the manner of making objections to a request for production of documents may be deemed to have waived the objection. 7 Moore's Federal Practice - Civil § 34.13(2)(a)–

(b) (2022); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. 2017) (holding that failure to make an objection with specificity and to indicate that responsive material is being withheld based on that objection is a waiver of all objections except as to privilege); *see also Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019) ("A number of courts have held that an objection that does not appropriately explain its grounds is forfeited.").

Here, Ruby Has's general objections and its boilerplate objections regarding each request do not adhere to the requirements of Rule 34(b)(2).  For example, "incorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection." *Fischer*, 2017 WL 773694, at *3.  In addition, Ruby Has's objection on the grounds that the requests are "'overly broad and unduly burdensome' is meaningless boilerplate," and its objection on the admissibility of evidence references language removed from Rule 26(b)(1) by the 2015 amendments.  *Id.*

Because Ruby Has agreed to produce non-privileged documents that are responsive to the requests without a timely objection complying with the provisions of Rule 34, the Court deems any objections now waived.  *See Fischer*, 2017 WL 773694, at *3; *Michael Kors*, 2019 WL 1517552, at *3.  To the extent the requests seek information from "May 1, 2018 to the present," the Court construes "present" to be the date on which Cambridge Capital's requests were served on Ruby Has—i.e., April 21, 2021.

## CONCLUSION

Ruby Has's motion to compel the production of Essa Al-Saleh for a 30(b)(1) deposition is DENIED.  Ruby Has's motion to compel the documents related to Document Request No. 33 is DENIED without prejudice to its renewal after the Court rules upon the pending motion to dismiss the Second Amended Counterclaims.  Cambridge Capital's motion to compel the

production of documents responsive to requests 29–34 and 42 with the relevant time period being May 1, 2018 to April 21, 2021 is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 81–82.

SO ORDERED.

Dated: March 24, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

11