```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
CAMBRIDGE CAPITAL LLC,                                           :
                                                                 :
                              Plaintiff,                         :
                                                                 :      20-cv-11118 (LJL)
              -v-                                                :
                                                                 :      OPINION AND ORDER
RUBY HAS LLC,                                                    :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Counterclaim defendants Cambridge Capital LLC ("Cambridge Capital"), Matthew Smalley ("Smalley"), and Benjamin Gordon ("Gordon") (collectively "the Cambridge Parties") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Second Amended Counterclaims, Dkt. No. 71, of counterclaim plaintiff Ruby Has LLC ("Ruby Has"). Dkt. No. 72. Specifically, the Cambridge Parties move to dismiss (1) the first counterclaim to the extent that it alleges fraud based on the alleged representations that "Gordon was a successful investor with a pristine reputation that was his 'crowning jewel'" and that "Cambridge [Capital] worked with existing management, rather than replacing them" as pleaded in paragraph 104 of Ruby Has's Second Amended Counterclaims; and (2) the second counterclaim for breach of a non-disclosure agreement. *Id.*

For the following reasons, the motion to dismiss is granted in part and denied in part.

**BACKGROUND & PROCEDURAL HISTORY**

Familiarity with the Court's prior Opinion and Order dismissing in part Ruby Has's counterclaims is presumed. *See* Dkt. No. 63; *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420 (S.D.N.Y. 2021).

Cambridge Capital is a private equity firm, and Ruby Has is a mid-sized, third-party logistics company. Dkt. No. 63 at 10. Gordon and Smalley are principals of Cambridge Capital. *Id.* at 9. In June 2020, Cambridge Capital and Ruby Has executed a Letter of Intent ("LOI") setting forth the parameters of a potential investment by Cambridge Capital in Ruby Has. *Id.* Ruby Has alleged that it was defrauded into signing and extending the LOI based on misrepresentations by Cambridge Capital. *Id.* at 12. It also alleged that Cambridge Capital disclosed confidential information in breach of a non-disclosure agreement ("NDA") between the parties. *Id.* at 14.

On September 30, 2021, the Court issued a decision on Cambridge Capital's motion to dismiss Ruby Has's amended counterclaims. *Id.* at 1. The Court dismissed Ruby Has's counterclaim for fraud in part and dismissed in their entirety the counterclaims for breach of the NDA, tortious interference with prospective business relations, and prima facie tort. *Id.* at 53–82. As relevant here, except with respect to two alleged misrepresentations,[1] the Court held that the amended counterclaims failed to plead fraud with particularity because they did not allege when the alleged misrepresentations were made, where or how they were made, who made them, or how and why the statements were false or misleading. *Id.* at 55–57. It also held that other statements the Cambridge Parties allegedly made—such as stating that "Cambridge partners included successful people in the industry" and that Gordon "was a highly successful investment professional"—were mere inactionable puffery. *Id.* at 58–59. The Court also dismissed Ruby Has's claim that the Cambridge Parties breached an NDA between the parties. *Id.* at 65–72.

---

[1] The Court upheld the fraud claim based on the alleged misrepresentations that (1) Cambridge Capital had cash on hand and was ready to invest in Ruby Has if a deal was finalized; and (2) Gordon was merely a victim in a failed investment (while failing to disclose that Gordon was actually the subject of an SEC investigation and consent order). *Id.* at 59–64.

2

Even accepting Ruby Has's allegation that the information Cambridge Capital disclosed was confidential, the written NDA between the parties expired by its terms on April 11, 2020, well before such disclosure allegedly occurred. *Id.* at 67–71. Ruby Has also alleged that, in May 2020, the parties orally agreed to continue the NDA to cover the parties then-commencing negotiations. *Id.* at 71. But the Court held that the allegations regarding the oral agreement failed because the amended counterclaims did not allege the oral agreement's purported material terms or that there was a meeting of the minds on such material terms. *Id.* at 71–72. The Court granted Ruby Has leave to amend its pleadings with respect to its counterclaims for fraud and breach of the NDA. *Id.* at 83.

On November 10, 2021, Ruby Has filed its Second Amended Counterclaims, repleading its counterclaims for fraud and breach of contract. Dkt. No. 71. For purposes of this motion only, the Court accepts as true the allegations of the Second Amended Counterclaims and the documents incorporated by reference.

The Second Amended Counterclaims allege that Cambridge Capital made affirmative misstatements to Ruby Has to induce Ruby Has to enter into the LOI with it. Specifically, Ruby Has alleges that, during initial team calls on May 15 and May 18, 2020 "and throughout late May and early June," Gordon "repeatedly represented" to Ruby Has that "he personally had a pristine reputation in the industry, which he would use to Ruby Has'[s] benefit" and discussed his extensive charitable work and philanthropy, "portraying himself as someone with the highest integrity." *Id.* ¶ 26. At one point, on a call in August 2020, Gordon told Ruby Has that he was "Keter Shem Tov," a Hebrew phrase meaning "crowning glory is his good name." *Id.* Throughout the negotiations, Gordon also painted himself as a highly successful investment professional with demonstrated success in advising and investing in companies. *Id.* ¶ 29. Ruby

3

Has alleges that it later learned that Gordon did not have the pristine reputation he represented but rather was under a permanent injunction with the SEC after having been charged with securities fraud. *Id.* ¶¶ 27, 76–77, 104. On or about May 21, 2019, Gordon also allegedly represented during an in-person meeting that he was on the board of the Hebrew Immigrant Aid Society ("HIAS"), the same organization that had helped the family of Esther Kestenbaum ("Kestenbaum"), Ruby Has's President and Chief Operating Officer, immigrate to the United States. *Id.* ¶¶ 20, 28. This representation allegedly attracted Kestenbaum to an investment from Cambridge Capital. *Id.* ¶ 28. Ruby Has learned that Gordon's representation was untrue when he later advised in October 2020 that he was not involved with that organization and based on research that revealed that he had never held that role with the organization. *Id.*

Ruby Has also alleges that Cambridge Capital and Gordon sold it on the idea of an investment deal with Cambridge Capital by emphasizing that Cambridge Capital works with existing management rather than replacing management. *Id.* ¶ 23. On May 15 and May 18, 2020 calls, Gordon stated that Cambridge Capital was "founder friendly" and gave as an example that the CEO of a company called GreenScreens remained in that position after Cambridge Capital's investment. *Id.* In addition, during a call in late June 2020, Gordon praised the CEO and co-founder of LiftIt, another company in which Cambridge Capital had invested, as being the reason why Cambridge Capital had made the investment and as someone with whom Cambridge Capital would work, again stating that Cambridge Capital was "founder friendly." *Id.* ¶ 24. Ruby Has alleges that it relied on these critical representations in signing the LOI, extending the Exclusivity Period, and negotiating with Cambridge Capital. *Id.* It also alleges that it learned after its deal with Cambridge Capital had collapsed that Cambridge Capital had replaced both of those CEOs within a matter of months after the investments and, "upon

4

information and belief, was in the process of replacing those CEOs while simultaneously making these representations to Ruby Has." *Id.* ¶ 24; *see also id.* ¶ 104.

Ruby Has alleges that the Cambridge Parties committed fraud by making affirmative misrepresentations that "Gordon was a successful investor with a pristine reputation that was his 'crowning jewel'" and that "Cambridge [Capital] worked with existing management, rather than replacing them." *Id.* ¶ 104.[2]

With respect to the NDA, Ruby Has alleges that, on May 15, 2020 during one of the parties' first phone calls regarding a potential transaction, Gordon suggested that the parties agree to protect any confidential information provided by Ruby Has to Cambridge Capital as part of due diligence and the negotiation. *Id.* ¶ 16. He also proposed that the parties use the same terms as previously agreed in an NDA that they had signed on April 11, 2019 but that had expired one year thereafter. *Id.* ¶¶ 13, 16. Ruby Has agreed. *Id.* ¶ 16. Ruby Has further alleges that the parties confirmed this agreement orally and in writing. *Id.* ¶ 18. The contents of the alleged oral confirmation are not described, but the writings include: (1) a July 3, 2020 email in which Smalley from Cambridge Capital stated "as we are a pending major investor, and have NDA and exclusive LOI in place with you, there really should be no issues to show us the contract"; and (2) and a July 8, 2020 email from Smalley in which he confirmed that a third-party contract was "subject to our NDA, which of course we honor in all respects." *Id.*

Ruby Has alleges that Cambridge Capital breached the oral NDA by disclosing in the complaint filed in this action confidential information learned during the course of due diligence

---

[2] Ruby Has also alleges that Gordon's partial or ambiguous statements created a duty to disclose the full truth of his investment with respect to Ability, Inc., including the SEC investigation and consent order. *Id.* ¶ 105. The Court sustained the sufficiency of that allegation in its previous Opinion and Order, Dkt. No. 63, and it is not challenged in this motion.

5

and negotiations, *id.* ¶ 116, including "information about Ruby Has'[s] alleged previous investment raises; details about its principals' ownership interests and alleged payment therefor; details about internal restructuring plans; details about its employees, operations and business plans; and statements about or implying Ruby Has'[s] alleged financial performance and value," *id.* ¶ 117.

On December 8, 2021, the Cambridge Parties moved to dismiss the fraud counterclaim in part and to dismiss the second counterclaim for breach of contract. Dkt. No. 72; *see also* Dkt. No. 73. Ruby Has filed its opposition on January 12, 2022, Dkt. No. 76, and the Cambridge Parties replied on February 9, 2022, Dkt. No. 80.

## LEGAL STANDARD

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) (quoting *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013)); *see also Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

The Court analyzes each of the two counterclaims in turn.

**I.  The Fraud Counterclaim Is Dismissed in Part**

The Cambridge Parties argue that the first counterclaim's allegations that "Gordon was a successful investor with a pristine reputation that was his 'crowning jewel'" and that "Cambridge [Capital] worked with existing management, rather than replacing them" do not allege fraud with particularity. Dkt. No. 73 at 1; *see also id.* at 4–8. They also claim that the statements constitute mere puffery or opinions of value or future expectations and are immaterial as a matter of law. *Id.* at 1, 9–12.

To state a claim for fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Budhani v. Monster Energy Co.*, 2021 WL 1104988, at *12 (S.D.N.Y. Mar. 22, 2021) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). Claims for fraud must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with particularity." Fed. R. Civ. P. (9)(b); *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010). Under Rule 9(b), a plaintiff alleging that the defendant made false statements must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Particularity "means the who, what, where, when and how: the first paragraph of any newspaper story." *Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (quoting *In re Initial Public Offering Securities Lit.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003)). Rule 9(b) requires that "the pleading 'explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "[P]laintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Id.* at 174; *see also Coppelson v. Serhant*, 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").

The allegations related to the statement that Gordon was a successful investor who had "a pristine reputation" in the industry does not state an actionable claim for fraud. As an initial matter, Ruby Has does not dispute that the portion of the statement that describes Gordon as "successful" is not independently actionable. *See* Dkt. No. 76 at 8–9. The statement is neither alleged to be false nor does it constitute a statement of fact that could give rise to a fraud claim. It is not different in kind than the statements that that "Cambridge partners included successful people in the industry" and that Gordon "was a highly successful investment professional" that the Court previously held were not actionable. Dkt. No. 63 at 59 (citing *Greenberg v. Chrust*, 282 F. Supp. 2d 112, 121 (S.D.N.Y. 2003), for the proposition that "[c]ourts have found parties'

assessment of their own abilities and successes to be non-actionable statements of opinion when rendered in good faith"); *see also Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d Cir. 1976) ("Value, quality, fitness, *success,* are usually understood as meaning no more than the objects conform with the declarant's individual yardstick in such matters.  While he may make it clear that his reference is to some commonly accepted measure, ordinarily he does not, and his hearer takes it for more at his peril.  Utterances such as those now at bar are in this class.  What one man would call a *success* another might not; there is no certain objective standard to which reference is impliedly made." (emphasis added) (quoting *Taylor v. Burr Printing Co.*, 26 F.2d 331, 334 (2d Cir.1928) (L. Hand, J.))).

Ruby Has claims that the statement that Gordon has a "pristine reputation" constitutes an affirmative misrepresentation of fact because it is inconsistent with the evidence that Gordon was the subject of an SEC investigation and had agreed to an SEC consent order that charged him with fraud and that Gordan was not on the board of HIAS. Dkt. No. 76 at 8–9.  The statement that Gordon has a "pristine reputation," however, is one of puffery that is too general to cause reasonable reliance.  *See ECA, Local 1134 IVEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).  Every businessperson would be expected to communicate to a potential counterpart that he or she had a good reputation; few would do business with those with a poor reputation.  Without more, no reasonable person could rely upon such a generalized statement in making a business decision.

The fact that, at the time, Gordon had been the subject of an SEC investigation and SEC consent order does not convert the Cambridge Parties' statement into one upon which a reasonable individual could rely or make it more than mere puffery.  The argument conflates the standard necessary to allege a statement of fact upon which an individual could reasonably rely

9

with the standard to prove falsity. The reason a statement of puffery cannot support a fraud claim is not that it is true; it is that it is so general that no reasonable individual could rely upon it. *See id.* ("The statements highlighted by [p]laintiffs are no more than 'puffery' . . . . [t]he statements are too general to cause a reasonable investor to rely upon them."). Thus, the fact that Ruby Has can now identify facts inconsistent with the Cambridge Parties' alleged statement does not convert that statement into one upon which Ruby Has was entitled to reasonably rely.

Similarly, the statements that Cambridge Capital "worked with existing management, rather than replacing them" and that it was "founder friendly" do not state an actionable claim for fraud because Ruby Has does not plead how or why these statements were false when made. Ruby Has argues that the statements were false because Gordon asserted that the CEO of GreenScreens remained in that position after Cambridge Capital's investment and that the CEO and co-founder of LiftIt was great and someone with whom Cambridge Capital was working, whereas Ruby Has later learned that both CEOs were replaced "within a matter of months of the investment." Dkt. No. 71 ¶ 24; *see also* Dkt. No. 76 at 9–11. These allegations, however, are insufficient to show that Gordon knew that the statements he made were false when he made them. That those CEOs were later replaced is akin to "unactionable falsity by hindsight." *Coppelson*, 2021 WL 148088, at *8. Ruby Has also alleges that, "upon information and belief, [Cambridge Capital] was in the process of replacing those CEOs while simultaneously making these representations to Ruby Has." Dkt. No. 71 ¶ 24. The allegation, however, that Cambridge Capital was in the process of replacing the CEOs at the time the representations were made is speculative and does not disclose any sources of information upon which the "information and belief" is based. *See G-I Holdings, Inc. v. Baron & Budd*, 2004 WL 1277870, at *2 (S.D.N.Y.

June 10, 2004); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (collecting cases).

Absent any well-pleaded allegations that the statements about the executives of GreenScreens and LiftIt were false, Ruby Has is left with the allegation that the bare claim that Cambridge Capital was "founder friendly" was fraudulent. However, the statement that someone is "friendly" is vague and frequently in the eye of the beholder. What, from one perspective, might be an act of friendship could from another be entirely neutral or even hostile. How, for example, would one judge a decision by an executive in place—albeit with diminished responsibilities—after a change in control. Depending upon the expectations of the executive, such an act could be considered a charitable and friendly one or a humiliating and destructive one. The statement alone says very little; context matters. For that reason, courts have consistently rejected claims of fraud based on statements that someone is "friendly" on the grounds that it constitutes mere puffery. *See, e.g.*, *Atkinson v. Omtron USA, LLC*, 2012 WL 12887700, at *3 (M.D.N.C. May 30, 2012) (statement that defendant was "grower friendly" is puffery); *Koens v. Royal Caribbean Cruises Ltd.*, 774 F. Supp. 2d 1215, 1221 n.8 (S.D. Fla. 2011) (statement that cruise excursion would be "fun" and "family friendly" was mere puffery); *Gold v. University of Bridgeport School of Law*, 562 A.2d 570, 573 (Conn. App. Ct. 1989) (statement that "friendly interaction" existed at school was puffery); *see also Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ("[S]tatements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events." (citing *Quasha v. American Natural Beverage Corp.*, 567 N.Y.S.2d 257, 257 (1st Dep't 1991))); *Greenberg*, 282 F. Supp. 2d at 120 ("[R]epresentations constituting 'mere opinion or puffery' are 'not actionable representations of fact.'" (quoting *Reich v. Mitrani*, 701 N.Y.S.2d 368, 369 (1st Dep't 2000))); *Coppelson*, 2021

WL 148088, at *6 ("Statements that amount to 'little more than mere puffery, opinions of value or future expectations . . . do not constitute actionable fraud.'" (quoting *Elghanian v. Harvey*, 671 N.Y.S.2d 266, 266 (1st Dep't 1998))).

For these reasons, the first counterclaim for fraud is dismissed to the extent that it alleges fraud based on the alleged representations that "Gordon was a successful investor with a pristine reputation that was his 'crowning jewel'" and that "Cambridge [Capital] worked with existing management, rather than replacing them."

## II. The Cambridge Parties' Motion to Dismiss the Breach-of-Contract Counterclaim for Failure to Plead Contract Formation Is Denied

The Cambridge Parties argue that the counterclaim for breach of contract should be dismissed because the allegations are insufficient to plead contract formation or a meeting of the minds. Dkt. No. 73 at 1. Ruby Has argues that the Second Amended Counterclaims sufficiently allege a new oral agreement with terms that would mirror the terms of the 2019 NDA but starting on May 15, 2020 and that a meeting of the minds was confirmed many times, including in writing, by the Cambridge Parties. Dkt. No. 76 at 16. Ruby Has also contends that it is "contrary to all business logic" and "to the events that occurred in this matter" that Ruby Has would engage in protracted due diligence and negotiations for months without an NDA in place to protect confidential information. *Id.*

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 2021 WL 5772290, at *4 (S.D.N.Y. Dec. 6, 2021) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). "A complaint fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major

terms. Conclusory allegations that a contract existed or that it was breached do not suffice." *Id.* (internal quotation marks omitted) (quoting *Emerald Town Car of Pearl River, LLC v. Philadelphia Indem. Ins. Co.*, 2017 WL 1383773, at *7 (S.D.N.Y. Apr. 12, 2017)). Absent a meeting of the minds on material terms, no contract can exist. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) ("It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.' The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." (citation omitted)). "Under New York law, before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 521 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting *Sang Lan v. Time Warner, Inc.*, 2014 WL 764250, at *2 (S.D.N.Y. Feb. 25, 2014)). "The requirement of definite terms is perhaps particularly acute in cases involving oral contracts, where 'a primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended.'" *Scarpinato v. 1770 Inn, LLC*, 2015 WL 4751656, at *4 (E.D.N.Y. Aug. 11, 2015) (alteration adopted) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)); *see also Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 514 (S.D.N.Y. 2012) ("Where a plaintiff alleges the existence of an oral agreement, he 'faces a heavier burden': 'To ensure that parties are not trapped into surprise contractual obligations that they never intended, more than agreement on each detail is required, there must be an overall agreement to enter into the binding contract.'" (quoting *Bloch v. Gerdis*, 2011 WL 6003928, at *3 (S.D.N.Y. Nov. 30, 2011))), *aff'd*, 766 F.3d 163 (2d Cir. 2014).

The Second Amended Counterclaims sufficiently plead the existence of an oral NDA to survive dismissal at this stage. The Second Amended Counterclaims allege that, on a phone call on May 15, 2020, "Gordon suggested that the parties again agree to protect any confidential information of Ruby Has that was provided to Cambridge [Capital] as part of due diligence and the negotiation," and "Gordon proposed that the parties utilize the same terms as previously agreed in the 2019 NDA." Dkt. No. 71 ¶ 16. Ruby Has agreed. *Id.* ¶ 17. In other words, the Second Amended Counterclaims plead facts regarding the circumstances surrounding how the new, oral agreement was formed, the date the agreement was formed, and—by incorporating by reference the terms of the 2019 NDA—the agreement's material terms. *See New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 405 n.7 (S.D.N.Y. 2019) ("[P]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements." (quoting *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002))); *cf. Lamda Sols.*, 2021 WL 5772290, at *4 ("A complaint fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." (quoting *Emerald Town Car*, 2017 WL 1383773, at *7)). The Second Amended Counterclaims also allege that Smalley from Cambridge Capital confirmed the existence of the agreement in two July 2020 emails referencing the NDA. Dkt. No. 71 ¶ 18.

The Cambridge Parties argue that the Second Amended Counterclaims do not sufficiently allege a contract because they never allege that the parties discussed the terms of the agreement. Dkt. No. 73 at 13–15. In support of their argument, they cite to two cases, which they contend hold that there was no meeting of the minds where the parties did not discuss material terms. *Id.* at 14–15 (citing *Concordant Assocs., Inc. v. Slutsky*, 480 N.Y.S.2d 540 (2d Dep't 1984), and *In*

14

*re Hepburn's Est.*, 211 N.Y.S.2d 311 (N.Y. Sur. Ct. 1961)).  The Second Amended Counterclaims here, however, allege that the parties discussed the material terms of the new, oral NDA by discussing that the terms would track the terms of the 2019 NDA.  Among other terms, the 2019 NDA specified a term of one year, i.e., that the obligation of confidentiality would expire within one year (which in the case of the new oral agreement would be May 15, 2021).  Because the terms of the 2019 NDA are sufficiently certain and specific, the terms of the new agreement may be ascertained.

The Cambridge Parties also claim that this Court's previous Opinion and Order already held that reference to the 2019 NDA is insufficient to demonstrate a meeting of the minds on the terms of the new agreement.  Dkt. No. 73 at 12–15.  But the Cambridge Parties overread this Court's prior decision, which was based on a previous version of Ruby Has's pleadings.  Ruby Has previously pleaded that Ruby Has and Cambridge Capital "agreed . . . to continue the [2019] NDA to cover the parties' then-commencing negotiations regarding a possible investment in Ruby Has."  Dkt. No. 41 ¶ 16.  The Court's previous Opinion and Order held that those pleadings did not allege a meeting of the minds on the material terms of an agreement because the 2019 NDA had already expired by the time of the May 2020 conversation "to continue" the expired agreement.  Dkt. No. 63 at 72.  For example, the Court pointed out how "[r]eference to the April 2019 NDA cannot supply an agreed term during which Cambridge Capital was to keep Ruby Has's newly-provided information confidential as that term had already ended."  *Id.*  By contrast, Ruby Has's Second Amended Counterclaims do not allege a continuation of an expired agreement in which any obligations of confidentiality had also already expired.  They instead allege a new, oral agreement with terms that mirror the terms of the 2019 NDA.  Contrary to the

previous allegations, the Second Amended Counterclaims allege terms of a new agreement that are definite and specific.

At this stage of the litigation, Ruby Has has sufficiently pleaded the existence of an oral NDA to avoid dismissal.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 72.

SO ORDERED.

Dated: June 24, 2022
      New York, New York

                                        LEWIS J. LIMAN
                                United States District Judge